

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

## The following constitutes the order of the Court.

**Signed January 5, 2006**                                **United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ART MIDWEST, INC., | § | CASE NO. 04-91225-RFN-11 |
| | § | |
| Debtor. | § | |

### MEMORANDUM OPINION CONTAINING
### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### WITH RESPECT TO DEBTOR'S MOTION FOR NEW TRIAL

On March 21, 2005, the Atlantic Parties[1] moved to dismiss debtor's bankruptcy case as a bad faith filing. On October 19, 2005, the court granted the motion to dismiss. The court based its ruling upon findings and conclusions, which it orally entered on the record on September 19, 2005.

Debtor now requests that it be granted a new trial or that the court amend and supplement its findings. The Atlantic Parties contend that debtor's motion is

---

[1] The following parties, either jointly or individually, are referred to as "the Atlantic Parties": Atlantic XIII, LLC, Atlantic Midwest, LLC, David M. Clapper, Atlantic Limited Partnership XIII, Regional Properties Limited Partnership, Atlantic XXXI, LLC, and Atlantic Midwest, Inc.

procedurally defective. Nevertheless, the court addresses the focal point of debtor's motion, that is, debtor's argument that the Atlantic Parties had no standing to move to dismiss debtor's bankruptcy case.

In its oral ruling on September 19, the court noted that this case is but one installment in extensive litigation between two groups of sophisticated parties. In that litigation, debtor is aligned with a group consisting of American Realty Trust, Inc., a creditor of debtor, Tacco Financial, Inc., debtor's owner, and Tacco Financial Point, an affiliate of debtor and an alleged creditor. For convenience, the court refers to this group as the "Art Group." The Art Group is opposed in that litigation and in this case by the Atlantic Parties.

After two days of hearings, the court, relying upon *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068 (5th Cir. 1986), ordered that debtor's case be dismissed. In doing so, the court found that debtor's bankruptcy case was part of a creative litigation strategy intended to (1) curtail the Atlantic Parties' right to appeal an adverse ruling rendered against them by the United States District Court for the Northern District of Texas (the "District Court"), and (2) impede the Atlantic Parties' efforts to prosecute alter ego claims against the Art Group in state court in Michigan. Among other things, the court found that debtor's bankruptcy case was not intended to (1) protect any employees, (2) preserve any real going concern, or (3) achieve any real rehabilitation. Instead, the purpose of the bankruptcy case was to use the bankruptcy court and its processes as a tool to alter the litigation rights of the Atlantic Parties. Based upon these and other findings, the court ordered that debtor's case be dismissed.

In its motion for new trial, debtor contends that the court erred by finding that the Atlantic Parties had standing to move for the dismissal of debtor's bankruptcy case. Debtor reminds the court that the District Court's judgment denied the very claims that form the basis of the Atlantic Parties' proofs of claims. Debtor argues that because the Atlantic Parties acknowledged in their proofs of claim that the District Court denied their claims, those claims have no prima facie validity under Rule 3001 of the Federal Rules of Bankruptcy Procedure. Moreover, according to debtor, because the Atlantic Parties introduced no evidence to substantiate their claims, their claims should have been denied, thus vitiating any standing that the Atlantic Parties had to file or prosecute their motion to dismiss.

Additionally, debtor argues that this court has no authority to review the final judgment of the District Court. In light of that judgment, debtor argues that this court can only conclude that the Atlantic Parties are not creditors and, as such, have no standing to seek dismissal of debtor's bankruptcy case.

The Atlantic Parties argue that the District Court's judgment is not final because they appealed the judgment, and that appeal was pending when debtor filed its petition in bankruptcy. Given the pendency of the appeal, the Atlantic Parties argue that their claims against debtor fall within the broad definition of "claims" within the meaning of 11 U.S.C. § 101(5). Thus, the Atlantic Parties assert that they are creditors within the meaning of 11 U.S.C. § 101(10), and, as such, have standing to seek dismissal under 11 U.S.C. § 1112(b).

The court need not reach the issue of whether the Atlantic Parties are creditors within the meaning of section 101(10) because section 1112(b) does not limit standing to

seek dismissal to "creditors," but confers such standing upon any "party in interest." The court has held, and reaffirms here, that the Atlantic Parties are parties in interest pursuant to 11 U.S.C. § 1109(b).

Section 1109(b) permits a "party in interest" to appear and be heard on any issue in a bankruptcy case. 11 U.S.C. § 1109(b). Title 11 does not define "party in interest." Section 1109(b) provides a list of examples of such parties, but the list is not exclusive. *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985). In the absence of any precise definition, "courts must determine on a case-by-case basis whether the prospective party in interest has a sufficient stake in the proceeding so as to require representation." *Id.* citing *In re Penn-Dixie Indus., Inc.*, 9 B.R. 941, 943 n.7 (Bankr. S.D.N.Y. 1981).

Not surprisingly, courts have defined the term "party in interest" with varying degrees of broadness. One line of authorities suggests that one is a party in interest if he or she possesses a significant legal (as contrasted with financial) stake in the outcome of the case. *See, e.g.*, *In re Overview Equities, Inc.*, 240 B.R. 683, 686-87 (Bankr. E.D.N.Y. 1999); 7 Alan N. Resnick, Henry J. Sommer & Lawrence P. King, COLLIER ON BANKRUPTCY § 1109.2[1] (15th ed. 2004). Other cases hold that a person must possess a direct financial stake in the outcome of the controversy in order to participate. *See, e.g.*, *FutureSource LLC v. Reuters, Ltd.*, 312 F.3d 281, 284 (7th Cir. 2002); *Nintendo Co. v. Patton (In re Alpex Computer Corp.)*, 71 F.3d 353, 357 (10th Cir. 1995).

Whether the court applies the broad or the more limited definition of "party in interest," the Atlantic Parties are parties in interest in this case. As the court has observed, one of debtor's chief objectives in this bankruptcy case is to curtail the Atlantic

Parties' right to appeal the District Court's judgment, at least as the appeal pertains to debtor.

The District Court's judgment impacts the Atlantic Parties in at least two ways. First, it orders that the Atlantic Parties take nothing on account of their claims against debtor. Second, it renders judgment in favor of American Realty Trust, Inc. and perhaps debtor against certain Atlantic Parties in the amount of $450,000. Debtor argues that the judgment is res judicata in this bankruptcy case and that the stay should not be lifted to permit the Atlantic Parties to continue to prosecute their appeal of the judgment, at least as to debtor. The effect of this strategy would be to finalize without appeal the monetary judgment against the Atlantic Parties and deny the Atlantic Parties' claims against debtor.

Additionally, prior to debtor's petition in bankruptcy, the Atlantic Parties brought certain alter ego claims against the Art Group in state court in Michigan. In order to impede that effort, debtor filed in its bankruptcy case a motion to sell its assets, including the alter ego claims. The proposed purchaser of the alter ego claims was an entity that the Atlantic Parties alleged was a confederate of debtor and the Art Group. Regardless of the affiliation of the proposed purchaser to the Art Group, the effect of the motion to sell would be to divest the Atlantic Parties of their alter ego claims or require them to pay a $300,000 overbid premium in order to pursue them. The only beneficiaries of the sale would be members of the Art Group.[2]

Given the relief sought by debtor, it is clear that debtor's reason for filing this case was to impair the Atlantic Parties' legal rights. Moreover, if debtor's strategy were successful, it would have a direct financial impact upon the Atlantic Parties. As the

---

[2] Debtor contended that the District Court's judgment denying the Atlantic Parties' claims also divested them of any standing to oppose the motion to sell.

targets of this strategy, the Atlantic Parties have standing under section 1109(b) to oppose it by moving to dismiss debtor's bankruptcy case.

Contrary to debtor's assertion, the court's ruling does not constitute an impermissible review of the District Court's judgment. The court's ruling herein does not in any way disturb that judgment. Instead, it merely holds that debtor's effort to manufacture "finality" of that judgment via bankruptcy confers standing upon the Atlantic Parties in this case.

Additionally, as debtor acknowledges in its pleadings, one of the Atlantic Parties, Atlantic Midwest, LLC, and debtor are general partners of an entity known as Art Midwest, LP (Debtor's Motion to Sell Assets Free and Clear of Liens, Claims, and Encumbrances ¶ 15). As general partners, Atlantic Midwest, LLC and debtor are jointly and severally liable for the debts of the partnership. To the extent that Atlantic Midwest, LLC pays debts owed by the partnership, it may assert claims for contribution against debtor. This right constitutes a claim within the meaning of 11 U.S.C. § 101(5)(A). As the holder of such a claim, Atlantic Midwest, LLC is a creditor of debtor pursuant to 11 U.S.C. § 101(10).

Finally, even if the Atlantic Parties had no standing to move to dismiss debtor's bankruptcy case pursuant to section 1112(b), the court, pursuant to section 105(a), may sua sponte dismiss a bankruptcy case filed in bad faith. *In re Bayou Self, Inc.*, 73 B.R. 682, 685 (Bankr. W.D. La. 1987). In *Little Creek*, the court instructed bankruptcy courts to be vigilant for those cases where the rehabilitative purposes of chapter 11 will not be served. 779 F.2d at 1073. This case is such a case, and this court has an independent duty to dismiss it, regardless of how the matter is brought to the court's attention.

The motion for new trial on the Atlantic Parties' motion to dismiss is denied.  In light of this ruling, the court also denies as moot debtor's motion for new trial on debtor's objections to the Atlantic Parties' claims, debtor's disclosure statement, and debtor's motion to sell its assets free and clear of liens and encumbrances.  For the reasons stated above, the court also denies debtor's request that the court amend and supplement its findings as requested by debtor.

IT IS SO ORDERED.